IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAURLANNA BRAXTON, et al.   *

    Plaintiffs,     *

vs.           *

ELDORADO LOUNGE INC., et al  *    Case No. 1:15-cv-03661-EHL

    Defendants.    *

           *

*  *  *  *  *  *  *  *  *  *  *  *  *  *

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR DISMISSAL OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

El Dorado, Inc., and Kings and Diamonds, Inc., Defendants by Russell A. Neverdon Sr, their attorney in answer to the Motion filed against them State:

1.  Defendants deny the allegations contained in the first of Plaintiffs' undisputed facts that El Dorado, Inc. and King and Diamonds, Inc. have sufficient ties to be considered a joint enterprise, that Defendants assigned any plaintiffs to work at both El Dorado, Inc. and King and Diamonds, Inc., that Plaintiff Scott was trained as a bartender at El Dorado with the intention that she work in that capacity at King and Diamonds, Inc, that Plaintiffs were sent from El Dorado to King and Diamonds, Inc, and vice-versa, by Defendants, that the Plaintiffs' auditioned for employment as dancers. Defendants admit to the balance of the allegations contained in the first of Plaintiffs' undisputed facts.

2.  Defendants deny the allegations contained in the second of Plaintiffs' undisputed facts that Defendants hired dancers as employees, that Plaintiffs were given specific shifts, that Defendants monitored 'each and everything' Plaintiffs sold. Defendants admit to the balance of the allegations contained in the second of Plaintiffs' undisputed facts.

3.  Defendants deny the allegation contained in the third of Plaintiffs' undisputed facts that El Dorado, Inc., and King and Diamonds, Inc., subjected Plaintiffs to various pay structures. Defendants admit to the balance of the allegations contained in the third of Plaintiffs' undisputed facts.

4.  Defendants deny the allegation contained in the fourth and final of Plaintiffs' undisputed facts that Plaintiffs were not contracted on the basis for *ad hoc* employment. Defendants admit to the balance of the allegations contained in the fourth and final of Plaintiffs' undisputed facts.

## Table of Contents

A.  Introduction                                        pgs. 1-2

B.  Table of Contents                                   pg. 3

C.  Discussion of Summary Judgment Standards            pg. 4

D.  First Affirmative Defense & Discussion              pgs. 5-8

E.  Second Affirmative Defense & Discussion             pg. 8-9

F.  Third Affirmative Defense & Discussion              pgs. 9-12

G.  Fourth Affirmative Defense & Discussion             pgs. 12-15

H.  Fifth Affirmative Defense & Discussion              pgs. 15-20

I.  Sixth Affirmative Defense & Discussion              pgs. 20-22

J.  Seventh Affirmative Defense & Discussion            pgs. 22-24

K.  Conclusion                                          pgs. 24-26

L.  Election of Jury                                    pg. 27

M.  Certificate of Service                              pg. 28

N.  List of Exhibits                                    pgs. 29-31

## DISCUSSION OF SUMMARY JUDGMENT STANDARDS

In order for summary judgment to be appropriate, there must be no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c); also See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In determining whether summary judgment should be granted, the court "must assess the documentary materials submitted by the parties in the light most favorable to the nonmoving party." *Id. (citing Gill v. Rollins Protective Services Co., 773 F.2d 592, 598 (4th Cir. 1985). also See Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).* If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving to identify specific facts showing that there is a genuine issue for trial. *See Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 535-536 (D. Md. 2007).* An issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Clincy v. Galardi South Enterprises, Inc., 808 F.Supp. 2d 1326 (2011), at *1338.*

Simply put, based on what the law provides, as well as the evidence which will subsequently be presented in Defendants' affirmative defenses, Defendants proffer that the Court will find, after reviewing Defendants documentary evidence, that there is evidence to support genuine material issues for trial.

## First Affirmative Defense and Discussion

First, for clarification purposes, Defendants assert that King and Diamonds is a subsidiary of the 'Partnership' Four One Four, LLC. *See Form 1096 for Four One Four, LLC; also See Form 1099-Misc for Four One Four, LLC; also See Form 1065 for Four One Four, LLC*, and that all tax records corresponding to Four One Four, LLC are implicative to King and Diamonds Inc. Defendants further assert that El Dorado, Inc. and King and Diamonds, as a matter of law, cannot be classified jointly as a single "enterprise engaged in commerce or in the production of goods for commerce," because pursuant to this matter, Defendants fail to constitute an 'Enterprise,' and that each Live Entertainment Liquor Establishment is under independent ownership.

The FLSA defines an 'enterprise' as "the related activities performed by any person or persons for a common business purpose… but shall not include the related activities performed for such enterprise by an independent contractor…" *Section 29 U.S. C. Section 203(r)(1).* Defendants assert that Plaintiffs are independent contractors, given the fact that each plaintiff has signed an individual independent contractor agreement. *See Independent Contractor Employment Agreement of Maurlanna Braxton; also See Independent Contractor Employment Agreement of Brionna Williams.* For the reasons that will subsequently be elaborated upon, Defendants assert

that the facts are not undisputed with regard to whether Plaintiffs, under the economic realities test, qualify as employees, rather than independent contractors.

Further, the subsection of this same statute also provides that "...within the meaning of this subsection, a retail or service establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which includes, but is not necessarily limited to, an agreement... that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or advertiser..." *Section 29 U.S.C. Section 203(r)(1)(A).* Defendants assert that because the supermajority (if not all) of the sale of income is generated from promotions of various venues (performing artists, rappers, adult entertainers, etc., and their following fan base) and those patrons whom subsequently purchase alcoholic beverages. *Id,* because both Adult Entertainment Business Establishments file their own separate tax reports, file their own separate report for miscellaneous income, have their own separate EIN (Employer Identification Number) *Id*, and the fact that the federal government both acknowledges and accepts each Live Entertainment Liquor Establishment's differences in classification (with Four One Four, LLC recognized as a 'Partnership,' with King and Diamonds, Inc., as a subsidiary of the aforementioned, and with El Dorado, Inc., recognized as an 'S Corporation,' respectively), that

the Court should find that each Live Entertainment Liquor Establishment is its own separate business entity. *See Employee Balance Report of El Dorado Lounge from November 22, 2014 to November 23, 2014 (Document ELH000146); also See Employee Balance Report of El Dorado Lounge from March 11, 2015 to March 12, 2015; also See Alcohol Purchase Agreement of March 25, 2016 (also known as Document ELH 000182); also See Alcohol Purchase Agreement of April 2, 2015 (also known as Document ELH 000183); also See Alcohol Beverage Purchases of May 16, 2014 (also known as Documents ELH 000184 through ELH 000185);also See Form 1096 for El Dorado Lounge; also See Form 1096 for Four One Four, LLC; also See Form 1099-Misc for El Dorado Lounge; also See Form 1099-Misc for Four One Four, LLC; also See Form 1065 for Four One Four, LLC; also See Form 1120S for El Dorado Lounge.*

With regard to the facts presented, Defendants assert that because each Adult Entertainment Business Establishment's gross annual income is less than $500,000; that both Licensed Live Entertainment Liquor Establishments do not constitute a single joint enterprise, irrespective of the fact that both Adult Entertainment Business Establishments each employ the same accountant, have the same owner (with respect to the fact the Owner Kenneth Antonio Jackson has a substantial financial investment in King and Diamonds, Inc. amounting to a measure of ownership at 50%, rather than complete ownership), and etc.; that Plaintiff's

allegation under *Section 29 U.S.C. Section 203(s)(1)(A)(ii)* of the FLSA falls outside the scope of

this specific Statute; and wherefore, that the facts of this matter are not undisputed, with respect

to whether Defendants constitute a joint enterprise, an "enterprise engaged in commerce or in the

production of goods for commerce," or an "enterprise" under the FLSA.

## Second Affirmative Defense and Discussion

While Plaintiffs file suit under the FLSA, they also file suit through the Maryland

equivalent, the Maryland Wage and Hour Law (MWHL). Plaintiffs are not entitled to

compensation for lost wages under the MWHL; Section 3-403(5) of the Maryland Wage and

Hour Law, Maryland Code Annotated, Labor and Employment Article states that "This subtitle

does not apply to an individual who is compensated on a commission basis." Given that

Plaintiffs were clearly working on a commission basis *Id*, it is evident that they are not entitled to

the recovery of damages under this statute. *See El Dorado Commission Payments of Maurlanna*

*Braxtion aka Cash (also known as 'Document 93-9'); also See El Dorado Commission Payments*

*of Brittany Scott aka Karma; also see El Dorado Commission Payments of Brionna Williams aka*

*Baby Doll; also see El Dorado Commission Payments of Stephanie Gambleaka Lucky.* Further,

Plaintiffs can only recover under either the FLSA or the MWHL, not both, as "Plaintiff cannot

recover twice for the same injury." *See United States v. Rachel, 289 F. Supp. 2d 688, 697 (D.*

*Md. 2003).*

## Third Affirmative Defense and Discussion

With regard to the First factor of the economic realities test, when determining the

degree of control an employer has over an individual dancer at the club, courts "generally look

not only to the guidelines set by the club regarding the entertainers' performances and behavior,

but also to the club's control over the atmosphere and clientele." *Butler v. PP&G, Inc., 2014 U.S.*

*Dist. LEXIS 5804.* While conceding Plaintiffs worked at the Defendants' premises

intermittingly for years at a time, Defendants assert that because of the extensive variation in not

only the number of hours worked when present, but also the times when Plaintiffs began

performing, the times when Plaintiffs decided to stop performing, and the length of bouts in

absenteeism between any two particular dates a plaintiff was present to perform and earn

commission. *See El Dorado Commission Payments of Maurlanna Braxtion aka Cash (also*

*known as 'Document 93-9'); also See El Dorado Commission Payments of Brittany Scott aka*

*Karma; also see El Dorado Commission Payments of Brionna Williams aka Baby Doll; also see*

*El Dorado Commission Payments of Stephanie Gamble aka Lucky,* that Plaintiffs were not

subjected to a schedule by Defendants in any way, and that degree of control Defendants exerted

over Plaintiffs was minimal.

While it is true that Courts have found significant control where clubs establish conduct policies and control performance pricing, Defendants assert that they have no control over performance pricing and that the only specific conduct policies they enforce are those established by the <u>Baltimore City Liquor Bar Rules</u>, <u>Adult entertainment Laws</u>, and the <u>Maryland State Criminal Laws</u>. In terms of conduct policies, Defendants assert that plaintiffs had complete discretion to wear whatever costumes or clothing, or lack thereof, *See Deposition of Brionna Williams of February 27, 2017(pg.27, ln 13 through pg. 28, ln 1-100; also see Deposition of Brittany Scott of February 27, 2017(pg. 14, ln 4); also See Deposition of Maurlanna Braxton of February 27, 2017, (pg. 75 ln 11-15); also See Deposition of Stephanie Gamble of February 27, 2017, at (pg.45 ln 3-6),* provided Plaintiffs measure of nudity was in accordance with the rules and regulations of the <u>Board of Liquor License Commissioners for Baltimore City</u>, as well as any other Maryland State statute.

Moreover, the Court has agreed with defendants in the past that, 'where a club implements regulations to assure compliance with law, those regulations are not evidence of the club's control over its dancers.' <u>*See Matson v. 7455, Inc., 2000 WL 1132110, at \*4.*</u> For example, In terms of an establishment's hours of operation, <u>Rule 3.01(a)</u> of the *Rules and Regulations for the Board of Liquor License Commissioners for Baltimore City* clearly states that "… live adult

entertainment may not be conducted between 2 a.m. and noon" Hence, Defendants by law must restrict for how long they may maintain daily operation to the public, as well as what time the establishment may begin its daily operation. In terms of performance pricing, defendants assert that there is no pay scale/pay structure to a performer's conduct on stage *Id,* and that Plaintiffs, like in similar service establishments, generate varying amounts of income through varying numbers of patrons. *See Document ELH000160; also See Document ELH 000180; also See Document ELH000159; also See Document ELH 000170; also See Document ELH 000172.* In a sense, it is the performer's patrons who rate performance(s), determine the value, and compensate accordingly by way of tips for the performances.  It then becomes the skills of salesmanship, influence and persuasion to convince a patron to pay for a "drink" for themselves (Plaintiffs) at a higher rate and repeatedly with the expectation of having one on one time and being individually engaged.

Similarly, while Courts have found behavioral prohibitions, among other factors when taken together, to constitute Adult Entertainment Business Establishments exerting significant control. *See Thompson v. Linda And A., Inc., 779 F. Supp.2d 139, 148 (D.D.C. 2011)*; also See *e.g., Hart v. Rick's Cabaret Int'l, Inc.,----- F.Supp.2d-------, 2013 WL 4822199, at \*6 (S.D.N.Y.2013)*, Defendants assert that their restrictions on performers behavior is strictly in

compliance with the <u>Rules and Regulation for the Board of Liquor License Commissioners for Baltimore City.</u> For example, <u>Rule 3.17</u> places specific restrictions on any and all physical contact, in terms of where a party may and may not touch another party, be it to a patron or to a performer. In accordance with this, the Court should find that such regulations, used in a manner of deterrence, to be reasonable, as any entity licensed by the Board of Liquor License Commissioners for Baltimore City may be held liable for any such offense committed on the premises by an employee, agent, independent contractor, etc. See <u>Adult Entertainment Business License for El Dorado Lounge</u>; also See <u>Adult Entertainment License for Four One Four</u>, LLC; also See <u>Rule 4.01(c)</u> of the *Rules and Regulations for the Board of Liquor License Commissioners for Baltimore City*; also See <u>Rule 4.02</u> of the *Rules and Regulations for the Board of Liquor License Commissioners for Baltimore City.* Based on what has been presented by Defendants, it is clear that the degree of control exercised by Defendants is up for dispute, and the Court should find, per Plaintiffs allegations, that the facts do not speak for themselves.

## Fourth Affirmative Defense and Discussion

In similar proceedings, in terms of an investment, Courts have looked to more than just a party's finances when determining whether a party did have an investment in one or more Adult Entertainment Business Establishments. *See* <u>Hart v. Rick's Cabaret Intern., Inc., 967 F.Supp.2d</u>

*901 (2013);* also *See Clincy v. Galardi South Enterprises, Inc., 808 F.Supp.2d 1326 (2011)*

(Where the Court reviewed a Plaintiffs' investment in the advertisement of defendant's Live

Entertainment Liquor Establishment); also *See, e.g., Morse, 2010 WL 2346334, at \*5.*  In

correspondence to this, Defendants assert that Plaintiffs investment in Defendants' Live

Entertainment Liquor Establishment is more than simply a matter of finances, that Plaintiffs

had ample opportunity to mire in risks and rewards, and that such opportunity was neither denied

unto them nor dependent upon Defendants' managerial skills. *See Deposition of Maurlanna*

*Braxton of February 27, 2017,(pg. 47 ln 4-9).* Defendants also have not established any rules or

practices whatsoever regarding what party can advertise, how much what party can advertise. *Id,*

and what a party may advertise for. *See Deposition of Kenneth Antonio Jackson of October 13,*

*2016, (Pg. 21, Ln 16-18) (also known as Document 93-2, pg 10).*

   Defendants further assert that Plaintiffs, both independently and of their own initiative,

take on an equal, if not greater investment in advertisement for not just both Live Entertainment

Liquor Establishments pursuant to this matter, but at countless other establishments. *See*

*Document ELH 000177; also See Document ELH 000178; also See Document ELH 000179;*

*also See Document ELH 000173; also See Document ELH 000168; also See Deposition of*

*Brionna Williams of February 27, 2017 at (pg. 31, ln 12-19); also See Deposition of Brittany*

*Scott of February 27, 2017 at (pg. 44, ln 7-11);also See Deposition of Maurlanna Braxton of*

*February 27, 2017 at (pg. 59 ln 15-21 through pg. 60 ln 1-18). F*urther, given that both El

Dorado Inc, and King and Diamonds Inc, are well known throughout Baltimore, with El Dorado

Inc, operating in excess of 40 years *Id,* Defendants assert that any extensive promotion for events

other than exotic dancing is done per the individual promoter(s). *See Documents EL 000108,*

*through EL 000110.* If anything, Plaintiff's measure of advertising is more specialized then that

of Defendants, given that Plaintiffs advertise the Live Entertainment Liquor Establishments

pursuant to this matter (as well as various other Adult Entertainment Business Establishments)

only on behalf of themselves *Id.,* while in contrast, the Live Entertainment Liquor

Establishments pursuant to this matter are rented out for "Rap shows, comedy shows… bachelor

parties, birthday parties, office parties…" *Id; also See Deposition of Kenneth Antonio Jackson of*

*October 13, 2016, (pg. 23, Ln 13-15) (also known as Document 93-2, pg 11).*

Defendants also assert that Plaintiffs, as well as others under independent contract

agreements were afforded the opportunity to 'rent out' either or both service establishments for a

day, and to collect all profits made. *Id.* In correspondence with this, Defendants assert that based

on Plaintiffs commission reports, noting the times and dates with which they were present and

not present at the establishment from arrival to departure, it is clear that Plaintiffs work was on

an opportunity-based structure. *See El Dorado Commission Payments of Maurlanna Braxton*

*(also known as 'Document 93-9'); also See El Dorado Commission Payments of Brittany Scott;*

*also see El Dorado Commission Payments of Brionna Williams; also see El Dorado Commission*

*Payments of Stephanie Gamble.* Further, given the variation in the hosting of entertainment

events, Defendants assert that unlike in Hart v. Rick's Cabaret Intern., Inc., 967 F.Supp.2d 901

(2013), Defendants measure of control over customer access varied with respect to the clientele

that Plaintiffs and others had, and that Defendants measure of control over customer access was

not specialized toward any one specific form of entertainment or entertainment event. *See*

*Documents EL 000108 through EL 000110; also See Document ELH 000186.*

### Fifth Affirmative Defense and Discussion

With regard to Plaintiffs' supposed lack of required skills, Defendants assert that

Plaintiffs' ability to perform does not, in and of itself, cover the totality of their skill set required

while present at either El Dorado, Inc., or King and Diamonds, Inc., because Plaintiffs were

under independent contractor agreements as 'saleswomen,' and not as exotic dancers.

Section 13(a)(1) of the FLSA provides an exemption to any employee employed in a bona fide

professional capacity, where "any employee… [1][c]ompensated on a… fee basis at a rate of not

less than $455 per week… and… [2][w]hose primary duty is the performance of work…

[r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative

endeavor." *Id.* In considering this, it is important to note that "[t]he exemption does not apply to

work which can be produced by a person with general manual or intellectual ability and

training." *Id.* In consideration to this, Defendants proffer that given how much money Plaintiffs

were able to make when present at either El Dorado. Inc, or at King and Diamonds. Inc, which

was determinative of how efficient Plaintiffs were able to solicit for the sale of alcoholic

beverages, that Plaintiffs duties require sufficient creativity. Defendants further assert that the

total amount of money Plaintiffs make is not exclusive to any one specific skill Plaintiffs utilize

in soliciting for the sale of alcoholic beverages. It should be further noted that these are not the

garden variety "topless dancers" as cited on other cases.  These Plaintiffs repeatedly suggested

auditions were required for approval before allowance to work at the places of business of the

Defendants.  Although self-serving statements to account for their ability to generate tips

exclusive of the agreed upon commissions, this was not the case.  *See Affidavit of William*

*Sheppard (Exhibit 39).* However, it is not unreasonable to infer that the Plaintiffs themselves

believe that they possess some extra-ordinary skills to promote themselves for the tips they

earned for their individual performances on stage. The fact that patrons may have considered

those performances further enticing to their willingness to purchase promotional drinks for the

Plaintiffs, the performances generated income solely to the benefit of the Plaintiffs, tips.

Unlike the Court in *Circle C. Invs.*, in *Priba Corp*, and in *Harrell,* in finding that dancers do not have the opportunity, skill, or initiative of persons in business for themselves, Defendants proffer that Plaintiffs, in acting as saleswomen, exhibit such standards, and that Plaintiffs are acting 'in business for themselves' *Id; also See El Dorado Commission Payments of Maurlanna Braxton (also known as 'Document 93-9'); also See El Dorado Commission Payments of Brittany Scott; also see El Dorado Commission Payments of Brionna Williams; also see El Dorado Commission Payments of Stephanie Gamble.* Unlike in *Verma v. 3001 Castor, Inc., Not Reported in F.Supp.2d (2014),* where the Court considered "…a prospective dancer's 'social skills, hygiene, [and] actions' including whether the individual can 'hold a conversation.'" Id. at 156:19-157:2 as factors in determining that exotic dancers did not have independent contractor status, Defendants proffer that, in acting as salespeople, that Plaintiffs' capacity to entertain patrons, as well as the factors viewed by the Court in Verma, as well as whatever other solicitation skills Plaintiffs have, are essential in determining independent contractor status for salespeople; as any combination of these skills contribute to success or failure in salesmanship.

In considering the State has a monopoly on coercion, by contrast any party can persuade, induce, or suggest something to another party. Now, in considering most forms of economics

require at least some form of social interaction, at not the least, some form of interpersonal communication.  Defendants argue that Plaintiffs successful nature in inducing, persuading, or advocating for patrons to purchase alcoholic beverages depended extraordinarily upon Plaintiffs social skills, how well Plaintiffs may hold a conversation. *Id,* and whatever other skill(s) Plaintiffs use to get patrons to buy higher priced alcoholic beverages. In terms of marketability, notwithstanding the fact that the ability to successfully induce, suggest, and/or persuade someone to do something, in and of itself, requires great talent and/or great skill. Further, being able to repeat this process fluidly would require even greater skill.

While Courts before have held that while there is limited genuine skill required to be an exotic dancer. *Id,* the Court also "…does not rule out the possibility of the rare case involving a form of nude dancing that reaches the level of high art, requiring extensive skill, training, and expertise…" *quoting Thompson v. Linda And A., Inc., 779 F.Supp.2d 139 (2011), at *150.* Wherefore, Defendants proffer, given how much money Plaintiffs were able to make between Plaintiffs commission reports. *Id,* and in gratuities from patrons. *See Document ELH000160; also See Document ELH 000180; also See Document ELH000159; also See Document ELH 000170; also See Document ELH 000172,* that their dancing would constitute a form of art, so much so that after patrons' witnessing of this 'art-form,' they were so inclined to purchase

alcohol from the licensed Live Entertainment Liquor Establishment(s) pursuant to this matter;

Plaintiffs would receive a gratuity from patrons not for the dance act itself, but for the

solicitation process as a whole. Altogether Plaintiffs were so creatively talented in soliciting for

the sale of alcohol through their entertaining and other social skills, that they're being highly

compensated for those solicitation skills by not just the Live Entertainment Liquor

Establishments via commissions, but also by those whomever they successfully solicit the sale of

alcohol to.

Plaintiffs acknowledge that they were being compensated on a commission basis, and

further, understood the significance of what being compensated on a commission basis meant for

both them and Defendants. *See Deposition of Brionna Williams of February 27, 2017(pg. 29, ln*

*5-9, pg. 33, ln 9-18, pg. 36, ln 4-21and pg. 40, ln1-10); also See Deposition of Brittany Scott of*

*February 27, 2017(pg. 11, ln12-21 through pg. 14, ln 1-2 and pg. 17, ln 12-16); also See*

*Deposition of Stephanie Gamble of February 27, 2017(pg. 13, ln 6-21 through pg. 14, ln 1-17;*

*also See Deposition of Maurlanna Braxton of February 27, 2017(pg. 17, ln 9-15 and pg. 25, ln*

*21 through pg. 30, ln 1-11); also See Deposition of Stephanie Gamble of February 27, 2017 (pg.*

*77, ln 8-21 through pg. 79, ln 1015),* where the more alcoholic beverages they solicited a patron

to for them, equated to more money compensated on their behalf. Further, in acknowledging, by

both parties, that Plaintiffs entertainment skills were not a condition to their being contracted out. *Id; also See Deposition of Kenneth Antonio Jackson of October 13, 2016, at (pg. 55 ln 16-21),* it is therefore logical to presume that Plaintiffs skills, whether natural or conditioned through their experiences at King and Diamonds, El Dorado Lounge, or any other Live Entertainment Liquor Establishment, require sufficient creativity, given how much they were compensated for their solicitation skills by Defendants and patrons alike. *Id.* Wherefore, the Court should consider all money made through Plaintiffs' commission reports as well as Plaintiffs' solicitation skills as made jointly through Plaintiffs' entire commission procedure, rather than as separate avenues of income made from separate acts. Based on what has been presented by Defendants, it is clear that the extent to Plaintiffs' skill set is up for dispute, and the Court should find, per Plaintiffs allegations, that the facts do not speak for themselves.

### Sixth Affirmative Defense and Discussion

With regard to the permanency and duration of the employment relationship, Defendants assert that based upon the records of Plaintiff's commission payments, *See El Dorado Commission Payments of Maurlanna Braxton (also known as 'Document 93-9'); also See El Dorado Commission Payments of Brittany Scott; also see El Dorado Commission Payments of Brionna Williams; also see El Dorado Commission Payments of Stephanie Gamble,* that such

20

variation between when Plaintiffs were present to solicit and when they were not present to

solicit drinks, makes Plaintiffs itinerant in their employment relationship with Defendants. While

this is implicative of independent contractor status, Courts have found that such facts in

providing an allegation merit entitle it to carry only modest weight. *See* *Circle C. Invs., 998 F.2d*

*at 328-29; also See* *Harrell, 992 F.Supp. at 1352; also See Hart,* ----- *F. Supp.2d at* -------, *2013*

*WL 4822199, at \*14;*

In considering this, "Courts must focus on the nature of [Plaintiff's] dependence… [to

said Live Entertainment Liquor Establishment(s)]" *See* *Priba Corp., 890 F.Supp. at 593.*

Defendants proffer that between the variation among Plaintiff's commission reports *Id.* as well as

Plaintiffs extensive promotion through social media of their performances *Id,* and of various

Adult Entertainment Business Establishments, as well as said Adult Entertainment Business

Establishments' events, See *Documents ELH 000177 through ELH 000179*; also See *Document*

*ELH 000169; also See Deposition of Stephanie Gamble of February 27, 2017 (pg. 101 ln 21*

*through pg. 102 ln 1),* that Plaintiffs dependence upon either Live Entertainment Liquor

Establishment pursuant to this matter is minimal. If anything, the Court would find that Plaintiffs

have a variety of Live Entertainment Liquor Establishments from which to choose from for

performing at, or for renting out from for a particular night. *Id.* Finally, Defendants assert that

because said Live Entertainment Liquor Establishments are separate business entities. *Id,* the

fact that whether or not Plaintiffs have performed at both establishments does not '*ipsofacto*'

make them any more dependent upon any one of said establishments, than any measure of

dependence Plaintiffs were to have, were they to be contracted to work at only one of the two

Live Entertainment Liquor Establishments pursuant to this matter. Based on what has been

presented by Defendants, it is clear that the permanency and duration of Plaintiffs' employment

relationship with Defendants is up for dispute, and the Court should find, per Plaintiffs

allegations, that the facts do not speak for themselves.

### Seventh Affirmative Defense and Discussion

Defendants dispute the extent to which Plaintiffs claim their services to be integral to

Defendant's Live Entertainment Liquor Establishments. It goes without saying that "Courts

have routinely noted that the presence of exotic dancers are… obviously very important, to the

success of a topless night club" See, *e.g., Harrell, 922 F.Supp. at 1352*; also See *Martin v. Circle*

*C. Invs., Inc., No. MO-91-CA-43, 1991 WL 338239, at \*4 (W.D.Tex. Mar. 27, 1991).* Regardless,

Defendants proffer that based on the facts to be presented that Plaintiffs' services are less

integral to the Live Entertainment Liquor Establishments pursuant to this matter than

Plaintiff's claim to be. Defendants assert that with regard to the sale of alcoholic beverages,

Plaintiffs may not sell alcohol, however are allowed only to solicit to customers for its purchase. Further and as previously stated, the Defendants are licensed liquor establishments that also engage in live entertainment of various kinds.  Their specific license of "Adult Entertainment" merely expands their ability to allow that type of entertainment in addition to all other noon-regulated entertainment amongst others.  *See Deposition of Maurlanna Braxton of February 27, 2017 ( pg.20 ln 11-18); also See Deposition of Stephanie Gamble of February 27, 2017, (p. 20 ln 4-13).* Further, Defendants assert that the sale of alcoholic beverages is outside the scope of the Independent Contract Employer Agreement signed by Plaintiffs. *Id,* and that the selling of alcoholic beverages is duty rendered exclusively to bartenders only. *Id.*

More importantly, with regard to the entertainment aspect provided by Plaintiffs, and the significance it places upon the success of the Live Entertainment Liquor Establishments pursuant to this matter, Defendants assert that both establishments are not dependent exclusively upon Plaintiffs, and by extension exotic dancers in general, for the provision of entertainment. In terms of economics, exotic dancers do not hold a monopoly on the supply of entertainment. As Licensed Live Entertainment Liquor Establishments, Defendants host a variety of entertainment venues. *See Document EL000108 through EL000109; also See Document EL000110; also See Document ELH 000186.* Further, in terms of how frequent other entertainment venues were

provided to Defendants, Defendants assert that other events occurred "Every week… at least [once a week]" *See Deposition of Kenneth Antonio Jackson of October 13, 2016, (pg. 23 ln 17-21).* Finally, the opportunity for Plaintiffs to 'solicit' to customers for the sale of alcoholic beverages is a privilege which is not offered exclusively to Plaintiffs, but is afforded to all entertainers *Id.* Based on what has been presented by Defendants, it is clear that whether Plaintiffs skills were integral to Defendant's service establishments is up for dispute, and the Court should find, per Plaintiffs allegations, that the facts do not speak for themselves.

## Conclusion

Wherefore, Defendants respectfully request the Court deny Plaintiffs' Motion for Partial Summary Judgment be denied. The FLSA provides that a service establishment and/or business entity is exempt from 'Enterprise' status when the labor provided for it comes from independent contractors. Similarly, the MWHL provides that those who work on a commission basis are not entitled for recovery. While it is now an undisputed fact that Plaintiffs were compensated on a commission basis, the facts presented by Defendants warrant merit in disputing Plaintiffs allegations. Defendants' tax records are evidence worthy of disputing Plaintiffs' allegation that El Dorado, Inc., and King and Diamonds, Inc., are a single joint enterprise. The Plaintiffs' Depositions as well as Defendants' commission reports are facts worthy of disputing that

Defendants had ultimate control over Plaintiffs work. The Defendants' Commission Reports, and the Plaintiff's Depositions as well as Plaintiffs' extensive advertising on their part are also facts worthy of disputing that Plaintiffs' opportunity for profit or loss was not dependent upon Defendant's managerial skills, and further, that Plaintiffs' Depositions as well as extensive advertising are also facts worthy of disputing that Plaintiffs did not have a significant investment in Defendant's service establishments. The Defendants' Commission Reports, the Plaintiffs' Depositions, and Plaintiffs' extensive advertising through use of social media are all facts worthy of disputing that the permanence of the working relationship between Plaintiffs and Defendants was consistent with at-will employment. The Defendants' tax records as well as promotions for forms of entertainment for other than exotic dancers are facts worthy of disputing the degree to which Plaintiffs' entertainment was integral to Defendants. The Plaintiffs commission reports, as well as posts on social media on behalf of both parties are worthy of disputing the lack of skills Plaintiffs possess.

WHEREFORE, Defendants, for the aforementioned reasons stated herein, request that this Honorable Court find that summary judgment is improper at this time, find that the facts set beforehand are worthy of merit for disputing Plaintiffs' allegations, and move for dismissal of Plaintiff's Motion with costs assessed to the Plaintiff, or if this Honorable Court is not so

inclined to adjudge based solely on the pleadings, in the alternative schedule a hearing as soon as

practicable.

## ELECTION OF JURY TRIAL

Defendants elect to have all issues in this matter tried before a jury.

Respectfully submitted,

Russell A. Neverdon, Sr. Esq.,

_____ /S/ _____
Attorney for Defendants
El Dorado, Inc., AND Kings and Diamonds,
Inc.
Law Offices of Russell A Neverdon
711 St. Paul Street
Baltimore, MD. 21202
410-235-2184
Neverdon@me.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of March, 2017, I mailed, first class,

postage prepaid, a copy of the foregoing that was electronically filed with Ken C. Gauvey, Law

Practice of Ken C. Gauvey, 6700 Alexander Bell Drive, Suite 200, Columbia, MD 21046,

Counsel for Plaintiffs.

_____/S/_____

Russell A. Neverdon, Sr, Esq,.
Attorney for Defendants
El Dorado, Inc.,
AND
King and Diamonds, Inc.,

### List of Exhibits

**Exhibit 1**            Year 2013 IRS Form 1096
                         Defendant Four One Four, LLC

**Exhibit 2**            Year 2013 IRS Form 1099
                         Defendant Four One Four, LLC

**Exhibit 3**            Years 2013-2014 IRS Form 1065
                         Defendant Four One four, LLC

**Exhibit 4**            Executed Independent Contractor Employment Agreement
                         & IRS Form W-9 for Plaintiffs Maurlanna Braxton &
                         Brionna Williams

**Exhibit 5**            Employee Balance Report from 11/22/14-11/23/14 &
                         03/11/15-11/12/15 for Defendant El Dorado Lounge, Inc.

**Exhibit 6**            Alcohol Beverage Purchase Orders 3/25/16, 4/2/15,
                         5/16/14, 2/27/15 for Defendant El Dorado Lounge, Inc.

**Exhibit 7**            Year 2014 IRS Form 1096
                         Defendant El Dorado Lounge, Inc.

**Exhibit 8**            Year 2015 IRS Forms 1099
                         El Dorado Lounge, Inc.

**Exhibit 9**            Years 2011-2015 IRS Form 1120S
                         Defendant El Dorado lounge, Inc.

**Exhibit 10**           El Dorado Commission Payment Slips (01/2014-01/2016)
                         Plaintiff Maurlanna Braxton aka "Cash" (EL001-0042)

**Exhibit 11**           Kings & Diamonds Commission Payment Slips (08/0213-
                         12/2013); El Dorado Commission Payment Slips (01/2014-
                         06/2015)
                         Plaintiff Brittany Scott aka "Karma" (EL0070-0092)

**Exhibit 12**           El Dorado Commission Payment Slips (05/2014-06/2015)
                         Plaintiff Brionna Williams aka "Baby Doll" (43 pgs.)

**Exhibit 13**           Kings & Diamonds Commission Payment Slips (01/2013-
                         12/2013); El Dorado Commission Payment Slips
                         (01/2014-01/2016)
                         Plaintiff Stephanie Gamble aka "Lucky" (26 pgs.)

**Exhibit 14**              Deposition Transcript for the Deposition of Plaintiff
                           Brionna Williams

**Exhibit 15**              Deposition Transcript for the Deposition of Plaintiff
                           Brittany Scott

**Exhibit 16**              Deposition Transcript for the Deposition of Plaintiff
                           Maurlanna Braxton

**Exhibit 17**              Deposition Transcript for the Deposition of Plaintiff
                           Stephanie Gamble

**Exhibit 18**              Photos of Plaintiff's Commissions (5 pgs.)

**Exhibit 19**              Copy Adult Entertainment License
                           Defendant El Dorado Lounge, Inc.

**Exhibit 20**              Copy Adult Entertainment License
                           Defendant Kings & Diamonds, LLC

**Exhibit 21**              Adult Entertainment Rules & Regulations for the Board of
                           Liquor License Commissioners for Baltimore City (2 pgs.)

**Exhibit 22**              Deposition Transcript for the Deposition of Defendant
                           Kenneth Jackson

**Exhibit 23**              Promotional Advertisements (5 pgs.)

**Exhibit 24**              Deposition Transcript for the Deposition of Plaintiff
                           Brionna Williams

**Exhibit 25**              Deposition Transcript for the Deposition of Plaintiff
                           Brittany Scott

**Exhibit 26**              Deposition Transcript for the Deposition of Plaintiff
                           Maurlanna Braxton

**Exhibit 27**              Promotional Advertisements (EL00108-110)

**Exhibit 28**              Deposition Transcript for the Deposition of Defendant
                           Kenneth Jackson

**Exhibit 29**              Deposition Transcript for the Deposition of Plaintiff
                           Brionna Williams (3 pgs)

**Exhibit 30**              Deposition Transcript for the Deposition of Plaintiff
                           Brittany Scott (3 pgs)

**Exhibit 31**            Deposition Transcript for the Deposition of Plaintiff
                         Stephanie Gamble

**Exhibit 32**            Deposition Transcript for the Deposition of Plaintiff
                         Maurlanna Braxton (3 pgs)

**Exhibit 33**            Deposition Transcript for the Deposition of Plaintiff
                         *Stephanie Gamble*

**Exhibit 34**            Deposition Transcript for the Deposition of Defendant
                         Kenneth Jackson

**Exhibit 35**            Promotional Advertisements (ELH00177-179 & 169)

**Exhibits 36**           Deposition Transcript for the Deposition of Plaintiff
                         Stephanie Gamble

**Exhibit 37**            Deposition Transcript for the Deposition of Plaintiff
                         Maurlanna Braxton

**Exhibit 38**            Deposition Transcript for the Deposition of Plaintiff
                         Stephanie Gamble

**Exhibit 39**            Sworn Affidavit of William Shepherd (2 pgs.)

**Exhibit 40**            Sworn Affidavit of Kimberly Jones (2 pgs.)

**Exhibit 41**            Sworn Affidavit of Tenia Stuckey (2 pgs.)