IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAURLANNA BRAXTON et al.,

    *Plaintiffs*,

    v.

ELDORADO LOUNGE, INC. et al.,

    *Defendants*.

Civil Action No. ELH-15-3661

**MEMORANDUM OPINION**

In a Second Amended Complaint (ECF 28), plaintiffs Maurlanna Braxton, Brittany Scott, Stephanie Gamble, and Brionna Williams, on behalf of themselves and others similarly situated, filed a wage action against two Baltimore nightclubs at which they previously worked: Eldorado Lounge, Inc. ("El Dorado") and Four One Four LLC, doing business as Kings & Diamonds ("Kings & Diamonds") (collectively, the "Corporate Defendants").[1]  They also sued defendant Kenneth Jackson, who owns El Dorado and holds a one-half ownership interest in Kings & Diamonds.  ECF 28 at 1; ECF 93-2 (Kenneth Jackson deposition) at 3-4.[2]

In particular, plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), as amended, Md. Code (2016 Repl. Vol.), §§ 3-401 *et seq.* of the Labor and Employment Article ("L.E."); and the

---

[1] Braxton filed the initial Complaint on December 1, 2015.  ECF 1.  Defendants answered on January 10, 2016.  ECF 3, ECF 4, ECF 5.  On July 5, 2016, the Complaint was amended to add plaintiffs Scott and Gamble.  Then, on July 27, 2016, the Second Amended Complaint was filed, adding Williams as a plaintiff.  ECF 28.  Plaintiffs' class action has never been certified, and plaintiffs do not currently seek certification.  I note that defendants alternately refer to the club as "King and Diamonds."

[2] At the outset of the litigation, Jackson was represented by the same lawyer who represented the Corporate Defendants.  However, he has been self-represented since January 3, 2017.  *See* ECF 58.

Maryland Wage Payment and Collection Law ("MWPCL"), as amended, L.E. §§ 3-501 *et seq.* In support of their claims, plaintiffs allege that they were employed by defendants as exotic dancers, but were not paid a minimum wage. ECF 28 at 6-7. Rather, they were paid by commission, receiving half the price of the drinks that customers of the clubs bought for them. ECF 93-7 (defendants' responses to interrogatories) at 9.

Five motions are now pending. Plaintiffs have filed a Motion for Partial Summary Judgment as to defendants' liability and with respect to their affirmative defenses (ECF 93), supported by a memorandum (ECF 93-1) (collectively, "Motion") and numerous exhibits. The Corporate Defendants responded in opposition (ECF 100), and submitted numerous exhibits. Jackson also opposes the Motion. ECF 101. The Corporate Defendants later amended their opposition. ECF 105. Plaintiffs replied. ECF 109 ("Reply").

In addition, plaintiffs filed a "Motion to Strike Response in Opposition to Motion for Summary Judgment," seeking to exclude from the Court's consideration the affidavits of two former employees of defendants. ECF 106 ("Motion to Strike Affidavits"). Jackson and the Corporate Defendants oppose the Motion to Strike Affidavits. ECF 110 (Jackson); ECF 111 (Corporate Defendants). Plaintiffs replied. ECF 114.

The Corporate Defendants submitted a "Motion for Leave to File Response to Plaintiff's Reply to Opposition for Motion for Partial Summary Judgment" (ECF 117), which I shall construe as a motion for leave to file a surreply ("Motion for Surreply"). Plaintiffs oppose the Motion for Surreply. ECF 122. Without leave of court, the Corporate Defendants subsequently filed the Surreply. ECF 126. Thereafter, plaintiffs submitted a Motion to Strike Defendants' Surreply (ECF 127, "Motion to Strike Surreply"), which the Corporate Defendants oppose. ECF 130.

Jackson has filed a "Motion For Sanctions For Violations Under Federal Rule Of Civil Procedure 11(c)," lodged against plaintiffs' counsel.  ECF 129 ("Motion for Sanctions").  No response was filed.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant plaintiffs' Motion in part and deny it in part.  I shall also grant plaintiffs' Motion to Strike Affidavits; deny defendants' Motion for Surreply; deny plaintiffs' Motion to Strike Surreply, as moot; and deny Jackson's Motion for Sanctions.

## I.      Factual Background

As noted, plaintiffs worked as exotic dancers and were paid by commission.  It is undisputed that they were not paid wages.  ECF 93-7 at 8-9.  The amount each dancer made from commissions each night was purportedly recorded by the club (*id.* at 9), and was paid in cash to the dancers the same night.  *Id.* at 18.

Plaintiffs were also allowed to keep any money they received in tips for dances (ECF 93-2 at 25), and defendants claim the tips were sometimes substantial.  *Id.* at 35.  However, plaintiffs were also expected to "tip-in"—to pay some amount at the beginning of the evening that would cover repairs for anything the dancers broke, a DJ, and other related expenses of the clubs.  *Id.* at 34-35.  Tip-in at El Dorado seems to have been about $35 (*id.* at 38), and was assessed at least on the weekends, if not every night.  *Id.* at 34.  Plaintiffs allege that in certain circumstances they were required to pay other fees and fines, such as if they left the building during work (ECF 93-3, Declaration of Scott, ¶ 5), or if they wanted the DJ to play specific songs for their dances.  ECF 93-6 (Declaration of Braxton), ¶ 4.  Defendants dispute these other fees.  ECF 93-7 at 20.

Defendants classified the dancers, including plaintiffs, as independent contractors rather than employees, and plaintiffs signed an "Independent Contractor Employment Agreement." *See* ECF 100-4 at 1. The parties dispute whether the dancers were assigned set shifts. *See* ECF 93-3, ¶ 5; ECF 93-7 at 21.

Additional facts are included in the Discussion.

## II.  Discussion

In order to determine the evidence within the scope of the Motion, I must resolve whether to consider the two challenged affidavits submitted by the Corporate Defendants. And, I must determine whether to consider the Corporate Defendants' surreply. Therefore, I shall first address the Motion to Strike Affidavits, the Motion for Surreply, and the Motion to Strike Surreply.

### A.  Motion to Strike Affidavits

Plaintiffs have moved to strike two affidavits submitted as exhibits with the Corporate Defendants' opposition to the Motion. The affiants are two of the Corporate Defendants' former bartenders. ECF 100-40 (Affidavit of Kimberly Jones); ECF 100-41 (Affidavit of Tenia Stuckey). In the affidavits, Ms. Stuckey and Ms. Jones discuss the employment process and management structure of the clubs, disputing some elements of plaintiffs' declarations (e.g., that plaintiffs were fined or subject to pre-determined schedules). *Id.*

Plaintiffs complain that the witnesses were not disclosed by defendants in response to plaintiffs' interrogatories. Therefore, they insist that the affidavits should not be considered on summary judgment, under Fed. R. Civ. P. 37(c)(1). ECF 106-1 at 1.

Rule 37(c)(1) provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." District courts have broad discretion to decide harmlessness. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014). The basic purpose of Rule 37(c)(1) is to prevent surprise and prejudice to the opposing party. *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

It is undisputed that defendants did not name the affiants in their response to plaintiffs' interrogatories. Defendants were asked to supply the names of "each person . . . with knowledge regarding the facts and circumstances . . . referred to in the operative Complaint." ECF 106-2 at 7. Defendants responded with one name: William Shepherd, the co-owner of Kings & Diamonds. *Id.*[3] Nowhere did defendants identify Ms. Jones or Ms. Stuckey.

Jackson suggests that disclosure was unnecessary because (1) "Plaintiffs' attorney . . . did or should have discovered the identity of Jones and Stuckey . . . from his clients' recollection of the facts and persons surrounding the allegations of the complaint itself;" and (2) "Plaintiffs identified Kimberly Jones [] and Tenia Stuckey [] during their depositions." ECF 110 at 3-4. The Corporate Defendants make the same arguments. ECF 111 at 3.

As to the first argument, even if plaintiffs were aware of other witnesses, this does not excuse defendants from properly answering the interrogatory. *See* C. Wright & A. Miller, 8 *Fed. Prac. & Proc. Civ.* § 2014 (3d ed.) (discussing discovery obligations in matters already known to the requesting party). The second argument—that the affiants had already been identified by the plaintiffs themselves—strains credulity. Defendants cite the depositions of Scott and Braxton, in which they mention that they had dealt with a bartender named "Jamilla." ECF 110-3 at 6-7, 20.

---

[3] Shepherd's name is spelled "Sheperd" in defendants' response to the interrogatory (ECF 106-2 at 7) and "Sheppard" in Jackson's opposition to the Motion to Strike Affidavits (ECF 110 at 4). But, in his signed Affidavit, he spells his name as "Shepherd." ECF 100-39 at 2.

Braxton was asked: "[D]oes Jamilla have a last name to the best of your knowledge?"  She answered: "No."  ECF 110-3 at 20.  According to defendants, "Jamilla" is a nickname for Tenia Stuckey.  ECF 110 at 4.  Defendants never explain why plaintiffs would have known that Jamilla is actually Tenia Stuckey.

Defendants' argument that plaintiffs identified Kimberly Jones is equally unpersuasive. They cite to the deposition of plaintiff Gamble and claim she alluded to Jones.  ECF 111 at 3.  In that deposition, ECF 110-3 at 14, Gamble was asked if someone inspected her nails and hair. Gamble answered in the affirmative.  Then, she was asked: "And who was that?"  Gamble responded: "Uh, what was her name?  Oh, geez.  Oh, goodness.  Big lips, full boobs.  Oh, my goodness.  I can't remember.  She's a [sic] older lady.  She stopped working because she got sick, bronchitis.  Can't remember her name.  But yeah, she was a bartender at King at [sic] Diamonds."  *Id.*  This response does not reflect an awareness of the identity of Kimberly Jones.

Defendants may not presume that plaintiffs know of defense witnesses, or how to contact them.  It is clear that the fact witnesses were undisclosed during discovery.

In *Southern States*, 318 F.3d at 597, the Fourth Circuit set out a five-factor test to determine if a failure to disclose was nonetheless justified or harmless, such that it could be considered.  The factors are: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."  *Id.*  The burden of showing that nondisclosure was justified or harmless lies with the non-disclosing party.  *See Sprint Nextel Corp. v. Simple Cell Inc.*, 248 F. Supp. 3d 663, 677 (D. Md. 2017) (citing *Southern States*, 318 F.3d at 596).

Without prolonging the discussion, it is clear that plaintiffs suffered surprise from defendants' nondisclosure of the two witnesses, which they could not cure after the completion of discovery, at the summary judgment stage.  Although this case is not yet at the trial stage, plaintiffs have not had an opportunity to depose the witnesses for purposes of summary judgment.  Moreover, the statements in the affidavits—especially the statements as to the dancers' work schedules (ECF 100-40 at 1) and the lack of fines (ECF 100-41 at 1)—are pertinent to plaintiffs' claims.  And, as discussed, defendants' explanation for their failure to disclose is sorely lacking.

Judge Blake of this Court considered a similar issue in *Sprint Nextel*, 248 F. Supp. 3d at 678, and decided to exclude the evidence from consideration in summary judgment proceedings, but to allow it at trial.  I opt to do the same.  Therefore, the Motion to Strike Affidavits of Stuckey and Jones shall be granted.  However, defendants shall not be prevented from using those witnesses at trial, conditioned on defendants making the witnesses available for deposition within 30 days following the docketing of this Memorandum Opinion.

## I.      Motion for Surreply and Motion to Strike Surreply

The Corporate Defendants filed a Motion for Surreply (ECF 117), along with the proposed Surreply.  ECF 126.  Plaintiffs oppose the Motion for Surreply (ECF 122) and have moved to strike the Surreply.  ECF 127.  The Corporate Defendants oppose the Motion to Strike Surreply.  ECF 130.

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court.  The filing of a surreply "is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored."  *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g., Chubb & Son v. C & C*

*Complete Servs., LLC,* 919 F. Supp. 2d 666, 679 (D. Md. 2013).  A surreply may be permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply.  *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted).  However, a surreply is not permitted where the reply is merely responsive to an issue raised in the opposition.  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003).  In that posture, there was a full opportunity to present the movant's arguments, and a surreply is unnecessary.  *Id.* at 606.

In their Motion for Surreply, the Corporate Defendants state no legal basis for why a surreply is appropriate.  Instead, they assert: "Plaintiff(s) have intentionally misstated and mischaracterized the facts of the case and the arguments contained therein."  ECF 117 at 1.  Moreover, they state that they "respectfully seek clarity and further support its [sic] previous arguments in aid of this Honorable Court's dispositive Ruling."  *Id.*  The Corporate Defendants offer no specifics, nor do they cite any legal authority for their Motion for Surreply.

Because I do not view the Surreply as a response to a matter raised for the first time in the Reply, I shall deny the Motion for Surreply.  As a result, I shall deny, as moot, plaintiffs' Motion to Strike Surreply.  ECF 127.

## II.        Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek summary judgment as to four issues: (1) whether plaintiffs were employees of defendants for purposes of the FLSA, MWHL, and MWPCL; (2) whether defendants violated the FLSA, MWHL, and MWPCL by failing to pay plaintiffs a minimum wage; (3) whether plaintiffs are entitled to recover wage damages equal to the minimum wage

for each week while employed by defendants; and (4) whether defendants' affirmative defenses may be applied to mitigate or negate the award of wages and damages.

For the reasons that follow, I shall grant the Motion in part and deny it in part.

## A.  Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.").  The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24.   Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).   However, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.   And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016).   Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007).   Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United*

*States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

### B.  Plaintiffs' Status as Employees

Plaintiffs have moved for summary judgment on the question of whether they were employees of defendants under the FLSA, MWHL, and MWPCL.  ECF 93 at 1.  Under the FLSA, an employee is "any individual employed by an employer," where "employ" means "to suffer or permit to work."  29 U.S.C. §§ 203(e)(1), (g).  Of import here, the definition of employee is liberally construed, in light of the remedial nature of the FLSA.  *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).

Defendants maintain that plaintiffs were not employees, but rather independent contractors (ECF 105 at 5-6), to whom the FLSA does not apply.  29 U.S.C. § 203(r)(1); *see also Schultz*, 466 F.3d at 304.  In support of this assertion, defendants present copies of documents with the heading "Independent Contractor Employment Agreement," signed by several plaintiffs.  *See, e.g.*, ECF 100-4.  However, an employee by any other name must still be properly paid.

To determine whether a person is an employee or an independent contractor, the Fourth Circuit uses a six-factor "economic realities" test that pertains to the relationship between the worker and the putative employer.  "No single factor is dispositive; . . . the test is designed to capture the economic realities of the relationship between the worker and the putative employer."  *Schultz*, 466 F. 3d at 305.  The Court must look to the totality of the circumstances.  *McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 240, 241 (4th Cir. 2016).

The factors are as follows, *id.* at 304-05:

(1) the degree of control that the putative employer has over the manner in which the work is performed;
(2) the worker's opportunities for profit or loss dependent on his managerial skill;

(3) the worker's investment in equipment or material, or his employment of other workers;
(4) the degree of skill required for the work;
(5) the permanence of the working relationship; and
(6) the degree to which the services rendered are an integral part of the putative employer's business.

The same six-factor test applies under the MWHL.  *See*, *e.g.*, *Randolph v. Power Comm Const., Inc.*, 7 F. Supp. 3d 561, 568-72 (D. Md. 2014).  Notably, under the FLSA and the MWHL, "Courts must look to the economic reality of the working relationship rather than any labels" used by the parties.  *McFeeley v. Jackson Street Entm't, LLC*, 47 F. Supp. 3d 260, 267-68 (D. Md. 2014) (Chasanow, J.), *aff'd*, 825 F.3d 235 (4th Cir. 2016).

In the last four years, judges of this Court have decided three separate cases in which exotic dancers brought FLSA and related claims against the clubs at which they worked.  *See Paige v. CD#15CL2001, Inc.*, PWG-15-3691, 2017 WL 193499 (D. Md. Jan. 18, 2017); *McFeeley*, 47 F. Supp. 3d 260; *Butler v. PP & G, Inc.*, WMN-13-430, 2013 WL 5964476 (D. Md. Nov. 7, 2013).  One of those cases has been affirmed by the Fourth Circuit, which approved the district court's analysis.  *McFeeley*, 825 F.3d 235.  In each of those cases, the defendants sought to categorize the plaintiffs as independent contractors.  *See Paige,* 2017 WL 193499 at *1; *McFeeley*, 47 F. Supp. 3d at 264; *Butler*, 2013 WL 5964476 at *1.  And, in each of those cases, the court determined that the plaintiffs were, in fact, employees under the FLSA.

The particulars of this case are quite similar to the cases cited above.  Analysis of the undisputed facts and application of the six factors of the economic realities test reveal no basis to depart from the now well-beaten path on which other judges in this District have travelled.  As discussed below, I am satisfied that, as a matter of law, plaintiffs were employees of defendants.

### 1.  Degree of Control

To determine the degree of control that defendants exercised over plaintiffs, "courts 'generally look not only to the guidelines set by the club regarding the entertainers' performances and behavior, but also to the club's control over the atmosphere and clientele.'" *Paige v. CD#15CL2001, Inc.*, 2017 WL 193499, at *3 (quoting *Butler,* 2013 WL 5964476, at *3 (D. Md. Nov. 7, 2013)).  Even though a club may not "manage the day-to-day aspects of the dancers' performance," *Butler*, 2013 WL 5964476, at *3, courts have still found significant control where the club was responsible for the environment and conditions of work.  *See McFeeley*, 47 F. Supp. 3d at 268.

Many facts regarding defendants' level of control are disputed.[4]  But, defendants have admitted that they set the club hours (ECF 93-2 at 47), required a "tip-in" from the dancers of at least $35 on at least weekend nights (*id.* at 38), and required dancers to sign in when they arrived.  *Id.* at 32.  Defendants also restricted the nights plaintiffs could work by renting out the clubs for other events, like birthday parties.  *Id.* at 12.  Moreover, courts have noted that dancers' dependence on the club to provide them with customers links them to "those conditions over which [the club has] complete control."  *McFeeley*, 47 F. Supp. 3d at 268 (quoting *Butler*, 2013 WL 5964476, at *3-4) (alteration in original).  Based on similar circumstances, the Fourth Circuit in *McFeeley* agreed with the district court that the clubs exercised "significant control" over how the exotic dancers performed their work, and such control "bore little resemblance to the latitude normally afforded to independent contractors."  825 F.3d at 242.

For these reasons, this factor weighs in favor of plaintiffs being employees.

---

[4] Plaintiffs submitted affidavits asserting, *inter alia*, that defendants would fine them for arriving late or leaving early (ECF 93-3, ¶ 5), and would order them to move between the clubs if more dancers were needed at Kings & Diamonds.  *Id.* ¶¶ 3-4.

### 2.   Opportunity for Profit or Loss

Defendants argue that plaintiffs' "successful nature in inducing, persuading, or advocating for patrons to purchase alcoholic beverages depended extraordinarily upon Plaintiffs' social skills, how well Plaintiffs may hold a conversation. *Id*, [sic] and whatever other skill(s) Plaintiffs may use to get patrons to purchase alcoholic beverages."  ECF 105 at 18.  Because the dancers make their money from commissions paid on drinks purchased by patrons, the logic goes, plaintiffs are best considered as "salespeople" whose profit or loss depends on their "capacity to entertain patrons."  *Id.*

However, the Fourth Circuit has clearly distinguished between the managerial skill associated with profit and loss and "simply good salesmanship."  *McFeeley*, 825 F.3d at 243.  "It is natural for an employee to do his part in drumming up business for his employer, especially if the employee's earnings depend on it."  *Id.*  Nevertheless, this does not mean the worker is an independent contractor.

Defendants, on the other hand, "'controlled a key determinant—pricing—affecting plaintiffs' ability to make a profit."  *Id.* (citation omitted).  *See* ECF 93-2 at 41.  Although plaintiffs could seek to sell a higher-priced drink, or sell more drinks to more customers, defendants still controlled the pricing.  *See id.*  This factor "fail[s] to tip the scales in favor of classifying the dancers as independent contractors."  *McFeeley*, 825 F.3d at 243.

### 3.   Investment in Equipment or Material

"In analyzing this factor, courts look to the capital investments made in the dance club by the dancers and club owners respectively."  *McFeeley*, 47 F. Supp. 3d at 271 (citation omitted).  Plaintiffs assert in affidavits that they made no investments in the clubs.  *See* ECF 93-6 at ¶ 4.  Defendants respond that plaintiffs made a significant investment, as indicated by their "tip-in,"

which defendants say paid for DJs and security, and by their ability to advertise their performances independently.  ECF 105 at 13.

These are not the "capital investments" considered by the district court in *McFeeley*. Rather, as in that case, defendants here admit to paying for rent, utilities, payroll, insurance, maintenance, and security.  *McFeeley*, 47 F. Supp. 3d at 271; ECF 93-2 at 16.  To the degree this factor points in either direction, it points towards plaintiffs being categorized as employees.

### 4.   Degree of Skill Required

"'Courts have held that there is no special skill required to be an exotic dancer, pointing to the lack of instruction, certification, and prior experience required to become an exotic dancer.'"  *Paige*, 2017 WL 193499, at *3 (citing *McFeeley*, 47 F. Supp. 3d at 271-72); *see also Butler*, 2013 WL 5964476, at *5.  Defendants have asserted that they held no auditions for the position of dancer.  ECF 105 at 17.  "Moreover, even the skill displayed by the most accomplished dancers in a ballet company would hardly by itself be sufficient to denote an independent contractor designation."  *McFeeley*, 825 F.3d at 244.  This factor weighs in favor of employee status.  *See McFeeley*, 47 F. Supp. 3d at 272.

### 5.   Permanency of the Working Relationship

The Fourth Circuit has indicated that this factor should be given little weight.  *McFeeley*, 825 F.3d at 244.  Plaintiffs allege that each of them worked for defendants for between one and three year, consistent with an "at will" employment relationship.  ECF 93-1 at 25-26.  However, it could also be consistent with an independent contractor relationship, especially given the itinerant nature of the work.  *See McFeeley*, 825 F.3d at 244; ECF 105 at 22.  This factor is neutral.

### 6.   Integral Nature of Services Provided

"'[A]ny contention that the exotic dancers were not integral to the operation of [an exotic dance club] flies in the face of logic.'"   *Paige*, 2017 WL 193499 at *4 (quoting *Butler*, 2013 WL 5964476, at *5) (first alteration added, second alteration in *Paige*).   In this case, defendants argue that because the clubs featured a variety of entertainment (including rappers, comedians, and porn stars), defendants "[didn't] care if them [sic] dancers come in or not."   ECF 93-2 at 23.

This contention beggars belief.   Despite defendants' occasional protestations to the contrary (*see* ECF 147 at 2), the clubs are "gentleman's clubs."   Their "Independent Contractor Employment Agreement" so specifies.   ECF 93-5 ("This is an agreement between Eldorado and King of [sic] Diamonds Gentleman's Clubs ('The Club') and, _____ . . . .").   El Dorado was licensed "as an adult entertainment business" (ECF 100-19), and Kings & Diamonds "as an adult entertainment tavern."   ECF 100-20.   El Dorado featured a special booth for lap dances.   ECF 93-2 at 44.

There is no dispute of material fact.   Plaintiffs' work was integral to the operation of defendants' business.   This factor weighs in favor of employee status.

### 7.   Consideration of All Factors

Defendants exercised substantial control over plaintiffs' work, plaintiffs were economically dependent on defendants for their income, and plaintiffs' services were integral to defendants' business.   Weighing all the factors together, there is no genuine dispute that the economic reality of plaintiffs' relationship to defendants was that of employee and employer. Therefore, plaintiffs were employees of defendants under the FLSA.

### 8.   State Statutes

The MWHL is the "State parallel" of the FLSA, and uses equivalent tests. *See Newell v. Runnels*, 407 Md. 578, 649, 967 A.2d 729, 771 (2009). Likewise, other judges of this Court have determined that the "economic realities" test determines the employment relationship under both the FLSA and the MWHL. *See, e.g.*, *McFeeley*, 47 F. Supp. 3d at 273; *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003) ("The requirements under the MWHL mirror those of the federal law; as such, Plaintiffs' claim under the MWHL stands or falls on the success of their claim under the FLSA."). Accordingly, plaintiffs were employees under the MWHL, as well.

Plaintiffs have not briefed, with any degree of detail, their argument that they are employees under the MWPCL. *See* ECF 93-1 at 30. Neither have defendants. This Court and Maryland courts have suggested that the factors to be considered in determining whether a person is an employee under the MWPCL may not be the same as the six factors for the FLSA. *See Jones v. Hoffberger Moving Servs. LLC*, 92 F. Supp. 3d 405, 411 (D. Md. 2015) (denying summary judgment on MWPCL and MWHA claims because they may not be sufficiently similar to FLSA); *Horlick v. Capital Women's Care, LLC*, 896 F. Supp. 2d 378, 388 (D. Md. 2011) (citing different factors); *Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 392, 780 A.2d 303, 318-19 (2001) (originating different factors). *But see Carollo v. Fed. Debt Assistance Ass'n, LLC*, RDB-17-1220, 2017 WL 4236734, at *3 (D. Md. Sept. 25, 2017) (applying the "economic realities" test to both MWPCL and FLSA claims, but not the same economic realities test as applied in *McFeeley*); *Campusano v. Lusitano Const. LLC*, 208 Md. App. 29, 38-39, 56 A.3d 303, 308 (2012) (applying a four-part economic realities test to both FLSA and MWPCL claims).

Because neither party has sufficiently briefed this complicated issue, I shall deny summary judgment on the question of whether plaintiffs were employees of defendants under the MWPCL.

### C.  Defendants' Violation of the Statutes

#### 1.  The FLSA

Because plaintiffs were employees of defendants, they were entitled to a minimum wage of at least $7.25 an hour if they were employed in an "enterprise engaged in commerce." 29 U.S.C. § 206(a).  An "enterprise engaged in commerce" has a technical definition under the FLSA.  Section 203(s)(1) of Title 29 defines an "enterprise engaged in commerce" as one that "has employees engaged in commerce" and "whose annual gross volume of sales made or business done is not less than $500,000." *Id.* at 203(s)(1)(A)(i)-(ii).  Defendants do not contest that they have some "employees engaged in commerce."   But, defendants contend that they do not meet the $500,000 gross sales threshold, because although Kings & Diamonds has in at least one year exceeded $500,000 in gross sales (ECF 100-3 at 2), El Dorado has not.  Plaintiffs contend that the two Corporate Defendants should be considered as a single enterprise, for which the collective gross sales exceeds $500,000. *See* ECF 100-3; ECF 100-9.

"[F]or an enterprise to be a 'single enterprise' under the [FLSA] it must conduct (1) related activities, (2) performed under unified operations or common control, and (3) for a common business purpose." *Brock v. Hamad*, 867 F.2d 804, 806 (4th Cir. 1989). *See also* 29 C.F.R. §§ 779.200-224.  "This conclusion, though[] based on findings of fact is one of law . . . ." *Hamad*, 867 F.2d 806 (citation omitted).

 It is not difficult to determine that defendants conduct related activities.  Both El Dorado and Kings & Diamonds are listed as "adult entertainment" businesses on their liquor licenses

-18-

(ECF 100-19; ECF 100-20); both serve drinks (ECF 93-2 at 22); and both feature exotic dance performances.  ECF 93-7 at 23.

As for the element of "common business purpose," both clubs were operated for the purpose of providing adult entertainment to customers, who would then buy alcoholic beverages. ECF 105 at 6.  The Fourth Circuit has said that, "when 'services provided are substantially similar from [business to business],'" the common purpose test is satisfied.  *Hamad*, 867 F.2d at 807; *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 892 (D. Md. 2011) ("Here, both Taverns clearly have the same business objective, that is, to sell food and beverages to paying customers.").  The two clubs offered similar services in furtherance of the same goals. Therefore, they had a common purpose.

More complicated is the question of unified operations or common control.  There is evidence of both unified operations and common control here.   Unified operations may be found where, for example:

> The various units may operate under a single trade name; construct their
> establishment to appear identical; use identical equipment; sell generally the same
> goods or provide the same type of services, and, in some cases, at uniform
> standardized prices; and in other respects appear to the persons utilizing their
> services or purchasing their goods as being the same business. They also may
> arrange for group purchasing and warehousing; for advertising as a single
> business; and for standardization of their records, as well as their credit,
> employment, and other business policies and practices.

29 C.F.R. § 779.220.  In circumstances such as these, the businesses may "constitut[e] one enterprise, despite the separate ownership of the various segments and despite the fact that the individual units or segments may retain control as to some or all of their own activities."  *Id.*

Several of these conditions are in evidence here.  It is undisputed that El Dorado and Kings & Diamonds shared a bookkeeper (ECF 93-2 at 9) and a point-of-sale tracking system (*id.* at 31); employees trained at one club for planned work at the other (ECF 93-3, ¶ 6); and the two

clubs share an employment application.   ECF 93-5.   Moreover, the application refers to both clubs collectively: "This is an agreement between Eldorado and King of [sic] Diamonds Gentleman's Clubs ('The Club') and, _____ . . . ." *Id.*

Some facts also support a finding of common control.   "In determining whether [two defendants] had common control, 'the determinative question is whether a common entity has the power to control the related business operations.'"   *Reich v. Bay, Inc.*, 23 F.3d 110, 115 (5th Cir. 1994).   Notably, "'[c]ommon control' includes the sharing of control and it is not limited to sole control or complete control by one person or corporation."   29 C.F.R. § 779.221.   Instead, "[o]wnership, or sufficient ownership to exercise control, will be regarded as sufficient to meet the requirement of 'common control.'" 29 C.F.R. § 779.222.   If there is such ownership, "it is immaterial that some segments of the related activities may operate on a semiautonomous basis, superficially free of actual control, so long as the power to exercise control exists through such ownership."   *Id.*   Moreover, "[o]wnership sufficient to exercise 'control' exist [sic] also where there is more than 50 percent ownership of voting stock . . . .   But 'control' may exist with much more limited ownership, and, in certain cases exists in the absence of any ownership."   29 C.F.R. § 779.223.

Here, Jackson was the sole operator of one club and one of two members of the LLC that owned the other club.   ECF 93-2 at 3-4.   Jackson appears to have had a sufficient ownership interest in both clubs to exercise control over them.   The other board members of El Dorado were "just to fill the seat" (*id.* at 3) and no person owned more of Kings & Diamonds than Jackson did.   Jackson was asked at his deposition: "Do you know what the ownership interest divide is in [Kings & Diamonds]?"   He answered: "Fifty-fifty."   *Id.* at 4.   And, it seems that he did exercise at least some control over each club, albeit a greater degree over El Dorado.   For example,

Jackson admitted that he wrote checks to pay bills for Kings & Diamonds. *Id.* at 10.   Plaintiffs also submitted evidence suggesting that William Shepherd, the co-owner of Kings & Diamonds, would appear at El Dorado and instruct dancers there to work at Kings & Diamonds instead. ECF 93-1 at 7; ECF 93-3, ¶¶ 2-4.

Defendants submitted the Affidavit of William Shepherd (ECF 100-39), stating: "Kenneth Jackson has no personal control over any of the business functions and operations of Four One Four; he is a mere investor and Co-Owner." *Id.* at 1.   But, whether or not Jackson exercised control is not the test; the question is whether he *could* exercise control over both clubs.   Although a "mere investor" may not have the authority to control a business, a "co-owner"—especially a co-owner who writes checks on behalf of that business—very well might.

El Dorado and Kings & Diamonds conducted related activities and shared a common business purpose.   A factfinder could readily find circumstances indicating that El Dorado and Kings & Diamonds had unified operations or were subject to common control, or both. However, on the evidence presented, which must be construed in the light most favorable to defendants, I cannot conclude, *as a matter of law*, that they were either a unified operation or subject to common control.   Jackson may have been a "mere investor" in a genuinely separate enterprise, which, as a matter of convenience, merely shared personnel and resources.

Thus, I cannot determine that the two clubs constituted a single enterprise engaged in commerce for purposes of the FLSA.   It follows that, at this juncture, I cannot aggregate the gross sales of the clubs in order to find that they meet the gross sales threshold of $500,000 under 29 U.S.C. § 203(s)(1)(A).

From the evidence submitted by the Corporate Defendants with their opposition to the Motion, it does appear that in 2014 Kings & Diamonds had gross sales that exceeded $500,000,

making it an enterprise engaged in commerce by itself.  ECF 100-3 at 2.  Thus, the dancers who worked at Kings & Diamonds in 2014 may be able to show that, as a matter of law, they were entitled to a minimum wage.  However, plaintiffs have not argued for this more specific finding, and indeed there is no evidence they were aware that Kings & Diamonds met the $500,000 threshold in that year.  I shall not, at this time, grant summary judgment as to a more granular issue than the ones for which plaintiff moved.

For this reason, I shall deny the Motion as to defendants' violation of the FLSA, because plaintiffs have not demonstrated as a matter of law that they are entitled to the ruling, on summary judgment, that the clubs are collectively an enterprise engaged in commerce.

## 2.  State Statutes

Plaintiffs have not shown as a matter of law that defendants violated the MWHL.  The MWHL features an exemption for commissioned employees.  L.E. § 3-403(5).  *See also Whittaker v. David's Beautiful People, Inc.*, DKC-14-2483, 2016 WL 429963, at *10 (D. Md. Feb. 4, 2016); *Randolph v. ADT Sec. Servs., Inc.*, 701 F. Supp. 2d 740, 748 (D. Md. 2010).  In their Reply, plaintiffs dispute defendants' characterization of plaintiffs as commissioned employees (ECF 109 at 4), although plaintiffs concede that they were paid on commission for drink sales.  ECF 93-1 at 9.  Instead, plaintiffs assert that the definition of "commissioned employee" should be borrowed from the FLSA at 29 U.S.C. § 207(i).  Plaintiffs argue that by this standard, defendants are required to prove that plaintiffs (1) were employed by a retail or service establishment; (2) had a regular rate of pay at least 150 percent of the minimum wage for each hour worked; and (3) had more than half of their total compensation composed of commissions.  ECF 109 at 4.

I disagree.  Despite plaintiffs' best efforts to show the contrary, the FLSA's reference to commissions is not equivalent to the MWHL's.   For one, no Maryland or federal court appears to have considered the constructions of "commissioned" as connected.   Moreover, the FLSA only considers commissions in the context of retail and service establishments—the subsection is headed, "Employment by retail or service establishment"—while the MWHL clearly encompasses all employees "compensated on a commission basis."   At the very least, I cannot conclude that there is no genuine dispute of fact as to defendants' violation of the MWHL. Therefore, plaintiffs' Motion on this question is denied.

Nor can I find that, as a matter of law, defendants violated the MWPCL, even if they were employees for its purposes.  The MWPCL "does not concern the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 373 Md. 501, 513, 819 A.2d 354, 362 (2003).  Plaintiffs' only argument with respect to the MWPCL is that, "[a]t the end of Plaintiffs' employment with Defendants, Plaintiffs still had not been paid any wages."  ECF 93-1 at 30.  Although plaintiffs may be able to recover unpaid wages, the MWPCL is not the proper vehicle for doing so.

Plaintiffs do refer to fees (ECF 93-1 at 29) and fines (ECF 93-1 at 23) that they were required to pay in the course of their employment.  The existence of the fines is disputed, although defendants admit that on at least some nights the dancers were required to pay a "tip-in" fee to cover some costs.  ECF 93-7 at 20-21.  Whether these practices constitute a violation of the MWPCL, however, is unclear.  As Judge Nickerson noted in *Butler*, 2013 WL 5964476 at *8: "It is clear from the language of § 3-503 [of the MWPCL] that, to be prohibited under the statute, the alleged deduction must not simply be a deduction from pay.  Rather, it must be a

deduction from [plaintiff's] wages."  On the evidence presented, the amount and type of any fees

or fines is disputed, as is the nature of the purse from which they were paid.  Therefore, I must

deny summary judgment on the question of the defendants' alleged MWPCL violations.

### D.  Plaintiffs' Entitlement to Recover Wages for All Hours Worked

Plaintiffs seek summary judgment on the issue of whether they "are entitled to recover

unpaid wage damages equal to the free and clear Federal Minimum Wage for all hours worked

each week while in Defendants' employ."  ECF 93 at 1.  Because I have denied summary

judgment as to whether defendants violated the FLSA, I shall deny summary judgment as to any

entitlement to recover wages.

### E.  Applicability of Affirmative Defenses

Plaintiffs seek summary judgment on the question of whether "Defendants' affirmative

defenses including all arguments for the service fee offset may [] be applied to mitigate or negate

any to-be-determined wages and damaged [sic] owed by Defendants to Plaintiffs."  ECF 93 at 2.

However, it does not appear that defendants have asserted any affirmative defenses, as such.

Defendants have filed two sets of answers to plaintiffs Second Amended Complaint (ECF

28).  *See* ECF 38 (answer by El Dorado) ECF 39 (answer by Kings & Diamonds), ECF 147

(second answer by Corporate Defendants); ECF 40, ECF 140 (answers by Jackson).  In the first

set of answers, defendants asserted four affirmative defenses, including the offset defense

mentioned by plaintiffs.  ECF 38 at 7-8, ECF 39 at 7-8, and ECF 40 at 7-8.  After plaintiffs filed

their Motion, the Court granted the Corporate Defendants' motion for "leave to file a belated

Answer to Plaintiff(s)' Second Amended Complaint."  ECF 143 (emphasis omitted); ECF 146.

Jackson also submitted a second answer to the Second Amended Complaint.  ECF 140.

However, these filings do not contain affirmative defenses.  Nor do defendants incorporate by

reference any earlier affirmative defenses.  The new answers contain a closing paragraph of assorted assertions, most of which are conclusory.  ECF 140 at 20-21; ECF 147 at 17-18.  But, these assertions are not styled as affirmative defenses and I shall not regard them as such.

"As a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'"  *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citation omitted).  As a result, defendants' original answers shall not be considered.  Therefore, defendants have asserted no affirmative defenses.  *See id.* ("Thus, if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims.").

Because defendants' answers to the Second Amended Complaint contain no affirmative defenses, plaintiffs' Motion as to defendants' affirmative defenses is denied, as moot.

### III.      Motion for Sanctions

Defendant Jackson moves for sanctions against plaintiffs' counsel, Kenneth Gauvey, under Fed. R. Civ. P. 11(b).  ECF 129.  In brief, Jackson alleges that Gauvey violated Rule 11(b) by failing to investigate the claims of plaintiffs, which Jackson asserts Gauvey should have known were frivolous.  *Id.* at 5.  Jackson also charges Gauvey with purposefully delaying the litigation by demanding discovery and refusing to settle.  *Id.* at 6.  Plaintiffs' claims are not so frivolous as to warrant sanctions, and demanding discovery and refusing to settle is plaintiffs' prerogative.  Thereore, I shall deny the Motion for Sanctions.

Rule 11(b) provides, in pertinent part:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

\*      \*      \*

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

"The primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation." *Moody v. Arc of Howard Cnty., Inc.*, 474 F. App'x 947, 950 (4th Cir. 2012). "[A] complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions." *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990). In *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 277 (4th Cir. 2006), the Fourth Circuit said plainly: "Factual allegations fail to satisfy Rule 11(b)(3) when they are 'unsupported by any information obtained prior to filing.'" (Citation omitted).

Fed. R. Civ. P. 11(c)(2) permits a party to file a motion for sanctions against another party for violation of Rule 11(b), provided that, before filing the motion with the court, the moving party must serve it on the opposing party and give the opposing party 21 days to withdraw "the challenged paper, claim, defense, contention, or denial."

In this instance, Jackson appears to challenge Gauvey's failure to correct or withdraw the Second Amended Complaint (ECF 28). ECF 129 at 6. Jackson claims to have notified Gauvey on November 18, 2016, of the purported violations (ECF 129 at 13), eleven days after Gauvey entered his appearance (ECF 33) and about four months after the filing of the Second Amended Complaint. However, Jackson has produced no evidence of the notification.[5] Under Local Rule 105.8(b), Gauvey need not respond to a motion for sanctions unless directed to do so by the Court. Gauvey has not responded, and I shall not direct him to do so.

---

[5] At the time Jackson claims he notified Gauvey of the alleged Rule 11 violations, Jackson was represented by counsel. *See* ECF 58.

-26-

Even assuming that Jackson sufficiently notified Gauvey of the alleged violations, the Motion for Sanctions is meritless.  The factual allegations Jackson makes in support of his sanctions motion are alternately trivial (e.g., the Second Amended Complaint alleges that plaintiffs served food when in fact the clubs did not serve food), pertain to disputed facts (e.g., plaintiffs say they were sent between clubs; defendants say they were not), concern legal conclusions (e.g., plaintiffs say they make up a certifiable class; defendants say they do not), and are unsupported by the evidence.  ECF 129 at 6-13.

As noted, "[t]he primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation."  *Moody*, 474 F. App'x at 950.  Especially in light of my other rulings in this Memorandum Opinion, I cannot conclude that plaintiffs' litigation lacks merit.  If Jackson believes he "has produced evidence to dispute every allegation of the Second Amended Complaint" (ECF 129 at 4), then he should be confident in his prospects at trial.  But, sanctions are inappropriate here.

## IV.    Conclusion

For the reasons set forth above, I shall grant plaintiffs' Motion to Strike Affidavits (ECF 106); deny defendants' Motion for Surreply (ECF 117); deny plaintiffs' Motion to Strike Surreply, as moot (ECF 127); grant in part and deny in part plaintiffs' Motion for Partial Summary Judgment (ECF 93); and deny Jackson's Motion for Sanctions (ECF 129).

An Order follows, consistent with this Memorandum Opinion.


Date:   October 27, 2017                    _____/s/_____
                                            Ellen Lipton Hollander
                                            United States District Judge